## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| STATE OF WEST VIRGINIA, el al., | ) |
| | ) |
| Petitioners, | ) |
| | ) |
| v. | ) Case. No. 24-1120 |
| | ) (and consolidated cases) |
| U.S. ENVIRONMENTAL PROTECTION | ) |
| AGENCY and MICHAEL S. REGAN, | ) |
| Administrator, U.S. Environmental Protection | ) |
| Agency, | ) |
| | ) |
| Respondents. | ) |
| | ) |

## EDISON ELECTRIC INSTITUTE'S MOTION TO INTERVENE
## IN SUPPORT OF RESPONDENTS

Pursuant to Rule 15(d) of the Federal Rules of Appellate Procedure and

Circuit Rule 15(b), Edison Electric Institute (EEI) respectfully moves to intervene

in the above-captioned petition for review[1] and other consolidated petitions in

support of Respondents U.S. Environmental Protection Agency and Administrator

Michael S. Regan (collectively, EPA). These petitions concern EPA's final agency

actions, collectively entitled "New Source Performance Standards for Greenhouse

Gas Emissions From New, Modified, and Reconstructed Fossil Fuel-Fired Electric

---

[1] Earlier today, Edison Electric Institute submitted its own petition for review to challenge certain aspects of the rules at issue.

Generating Units; Emission Guidelines for Greenhouse Gas Emissions From Existing Fossil Fuel-Fired Electric Generating Units; and Repeal of the Affordable Clean Energy Rule," 89 Fed. Reg. 39,798 (May 9, 2024) (Final Rules).

This motion is timely because it is filed within 30 days of the above-captioned Petitioners' filing of their petition for review. Fed. R. App. P. 15(d); Cir. R. 15(b).

## BACKGROUND

## I. Clean Air Act Section 111

Clean Air Act (CAA) section 111 directs the establishment of "standards of performance" for both new and existing stationary sources of air pollutants. EPA is to identify "a list of categories of stationary sources" that "cause[], or contribute[] significantly to, air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7411(b)(1)(A). A "standard of performance" is defined as:

> a standard for emissions of air pollutants which reflects the degree of emission limitation achievable through the application of the best system of emission reduction which (taking into account the cost of achieving such reduction and any nonair quality health and environmental impact and energy requirements) the Administrator determines has been adequately demonstrated.

*Id.* § 7411(a)(1).

### A. CAA Section 111(b) Standards for New and Modified Sources

Once EPA "lists" a source category for regulation under section 111, it must establish "standards of performance" for "new" stationary sources (defined to

2

include new, modified, and reconstructed sources) within that category. *Id*. §
7411(b)(1)(B); *see also id.* § 7411(a)(2) (defining a "new" source to include a
"modified" existing source). These standards are referred to as new source
performance standards (NSPS). The standard must be based on what EPA's
Administrator determines to be the "best system of emission reduction" (BSER) that
"has been adequately demonstrated." *Id.*

Consistent with statutory provisions for new and modified sources, EPA
generally has not required the installation of any specific emission control
technology to comply with an NSPS. *Id.* § 7411(b)(5). Instead, a source may comply
through any means that will achieve the specified emission rate.

## B.    CAA Section 111(d) Guidelines for Existing Sources

Where EPA has established a standard of performance for a particular
pollutant emitted by *new* sources in a source category, it must also establish
procedures under which each State must submit a plan that establishes standards of
performance for any *existing* source within its borders for any pollutant "to which a
standard of performance … would apply if such existing source were a new source."
*Id.* § 7411(d)(1).

EPA identifies the BSER *and* develops "guidelines" reflecting emission
reductions that can be achieved by existing sources through the application of the
selected BSER. 40 C.F.R. § 60.22(b)(2), (5). EPA's guidelines must reflect

application of the BSER (considering the cost of such reduction) that has been adequately demonstrated, address "the time within which compliance with emission standards of equivalent stringency can be achieved," and specify "different emission guidelines or compliance times or both for different sizes, types, and classes of designated facilities when costs of control, physical limitations, geographical location, or similar factors make subcategorization appropriate." *Id.* States then set their standards of performance based on those established by EPA's section 111(d) guidelines. *See id.* § 7411(a)(1).

## II. The Challenged Actions

These consolidated cases involve petitions for review of four final actions of Respondent EPA under CAA section 111 applicable to greenhouse gas (GHG) emissions from fossil fuel-fired electric generating units (EGUs), commonly referred to as power plants. These four actions are: (1) revision of the NSPS for GHG emissions from new and reconstructed fossil fuel-fired stationary combustion turbines; (2) revision of the NSPS for GHG emissions from fossil fuel-fired steam generating units that undertake a large modification; (3) promulgation of emission guidelines for GHG emissions from existing fossil fuel-fired steam generating EGUs, including both coal-fired and oil/gas-fired steam generating EGUs; and (4) repeal of the Affordable Clean Energy rule. 89 Fed. Reg. at 39,799.

Specifically, the Final Rule for *new and reconstructed stationary combustion turbines* (generally natural gas-fired) divides those units into three subcategories— low load, intermediate load, and base load—based on their annual capacity factor and sets the BSER and standards of performance for each subcategory. *Id.* at 39,916- 17. It further divides the base-load subcategory into two phases and selects "highly efficient combined cycle generation plus 90 percent [carbon capture and sequestration ("CCS")]" as the BSER for the second phase but does not require compliance until 2032. *Id.* EPA had also proposed to include a BSER of co-firing with low-GHG hydrogen, but the Agency did not finalize that part of its Proposal.[2] *Id.* at 39,917. Instead, EPA explained that, since the standards of performance may be met by any technology, low-GHG hydrogen co-firing is not BSER but remains an acceptable compliance option. *Id.*

The Final Rule for *existing fossil fuel-fired steam generating units* subcategorizes sources by fuel type (*i.e.*, coal, oil, natural gas) and by federally enforceable dates for permanently ceasing operation. *Id.* at 39,840-42. It further

---

[2] *E.g.*, *West Virginia v. EPA*, 597 U.S. 697 (2022) (submitted *amicus* brief in support of EPA), https://www.supremecourt.gov/DocketPDF/20/20-1530/211265/20220125125212019_Final%20EEI%20NACWA%20ACE%20Amicus.pdf; Edison Electric Institute, *Comments on EPA's Supplemental Proposal on Clean Air Act Section 111 Rules for Power Plants, Docket No. EPA-HQ-OAR-2023-0072* (Dec. 20, 2023) (EEI Supplemental Comments), EPA-HQ-OAR-2023-0072-8182; Edison Electric Institute, *Comments Regarding EPA's Proposed Affordable Clean Energy Rule* (Oct. 31, 2018), EPA-HQ-OAR-2017-0355-24034.

subcategorizes natural gas- and oil-fired EGUs by capacity factor and modifies the BSER proposed for each subcategory for existing coal-, oil-, and natural gas-fired EGUs. *Id.* EPA purports to have determined that "CCS with 90 percent capture of $CO_2$" by January 1, 2032, has been adequately demonstrated for existing coal-fired steam EGUs intending to operate on or after January 1, 2039. *Id.* at 39,840. If a coal-fired steam EGU demonstrates that it plans to close by January 1, 2039, the EGU will not be subject to a BSER based on 90 percent CCS but will need to transition to co-fire with 40 percent natural gas by January 1, 2030. *Id.* at 39,841. Finally, EPA introduced an exemption from the standards for existing EGUs that commit to cease operation by January 1, 2032. *Id.*

## III.    EEI and Its Interests

EEI is the association that represents all U.S. investor-owned electric companies. EEI members, many of whom are directly regulated by the Final Rules challenged here, provide electricity for nearly 250 million Americans and operate in all 50 States and the District of Columbia. EEI members invest more than $150 billion each year, on average, to make the energy grid smarter, cleaner, more dynamic, more flexible, and more secure; to diversify the nation's energy mix; and to integrate new technologies that benefit both customers and the environment. EEI members are united in their commitment to make the energy they provide as clean as they can as fast as they can, while keeping reliability and affordability front and

center, as always, for the customers and communities they serve. Across the nation, EEI members are leading a clean energy transformation, making significant progress to reduce GHG emissions, while also creating good-paying jobs and an equitable clean energy future.

An important function of EEI is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. EEI closely monitors federal agency actions to identify issues of concern to its members and frequently participates in administrative and judicial proceedings related to rules affecting EEI members. With regard to EPA's development of CAA section 111 rules for GHG emissions from power plants, EEI has been an active participant before, during, and now after EPA's rulemaking proceedings. EEI submitted comments on the Proposed Rules,[3] supporting some aspects of the Proposal (for example, EPA's plan to subcategorize sources based on expected retirement date and to provide compliance flexibilities for States and units to support achievement of standards),[4] while

---

[3] *New Source Performance Standards for Greenhouse Gas Emissions from New, Modified, and Reconstructed Fossil Fuel-Fired Electric Generating Units; Emission Guidelines for Greenhouse Gas Emissions from Existing Fossil Fuel-Fired Electric Generating Units; and Repeal of the Affordable Clean Energy Rule* (Proposed Rules or Proposal), 88 Fed. Reg. 33,240 (May 23, 2023).

[4] *See* Edison Electric Institute, *Comments on EPA's Proposed Clean Air Act Section 111 Rules for Power Plants. Docket No. EPA-HQ-OAR-2023-0072* at 17 (Aug. 8, 2023) (EEI Comments), EPA-HQ-OAR-2023-0072 ("[T]he proposed retirement subcategories … are consistent with many of the trends in the sector regarding already planned unit retirements and will be beneficial for many

identifying concerns about other aspects of the Proposal (for example, the identification of CCS technology as the BSER for certain units).[5] While issue statements have not yet been filed in these consolidated actions, based on comments submitted to EPA, EEI expects that some Petitioners may challenge EPA's decision to exempt certain existing coal-fired power plants from the Final Rules, EPA's authority to subcategorize units based on various metrics and to apply distinct requirements to those subcategories, EPA's determination not to base standards for certain units on CCS, and certain compliance options and flexibilities, among other potential issues.[6] To preserve the ability to defend these decisions, EEI seeks to intervene in support of EPA on a limited subset of issues.

---

companies and their customers."); *id.* at 181-82 ("In this rulemaking, EPA has the opportunity and authority under CAA section 111 to incorporate compliance flexibilities and mechanisms to help EGUs reduce GHG emissions. EPA has included several important and well-founded compliance flexibilities in the Proposed Section 111 Rules.").

[5] *See* EEI Comments at 15-16.

[6] Because Petitioners' issue statements are not yet due, and because Petitioners may also advance arguments that they did not raise in their own comments as long as they were fairly presented during to EPA during the comment period, *see* 42 U.S.C. § 7607(d)(7)(B), the issues mentioned above are necessarily somewhat speculative. Moreover, the time for challenging the Final Rules runs for 60 days from the publication of the Rule in the Federal Register on May 9, 2024, 42 U.S.C. § 7607(b), and thus has not yet expired. Additional petitions for review may yet be filed that raise issues in which EEI may take an interest, but which are not yet known. *See* Cir. R. 15(b) ("A motion to intervene … concerning direct review of an agency action will be deemed a motion to intervene in all cases before this court involving the same agency action or order, including later filed cases").

**ARGUMENT**

EEI has a significant, direct interest in this litigation to protect its members' operations and, more importantly, their customers, which ultimately bear the costs of compliance with environmental and climate regulations; indeed, EEI is also filing a petition for review of other aspects of the Final Rules to protect customers. *See* n.1, *supra*. Numerous EEI members are directly regulated under the Final Rules, and thus have standing to intervene in this litigation. EEI's (and its members') interests in this case are not adequately represented by the existing parties and may be harmed by a favorable ruling for certain of the Petitioners. The Court should grant EEI's motion for leave to intervene as a respondent in this case because EEI meets the standard for intervention in petition-for-review proceedings in this Court.

## I.    Petition for Review Intervention Standard

Under Federal Rule of Appellate Procedure 15(d), a party must move for intervention "within 30 days after the petition for review is filed" and need only provide a "concise statement of the interest … and the grounds for intervention." Fed. R. App. P. 15(d). Although Rule 15(d) does not provide clear criteria for intervention, Federal Rule of Civil Procedure 24(a) and the "policies underlying intervention" in federal district courts provide guidance. *See Int'l Union U.A.W. v. Scofield,* 382 U.S. 205, 216 n.10 (1965); *Bldg. & Constr. Trades Dep't v. Reich*, 40

F.3d 1275, 1283 (D.C. Cir. 1994) (confirming appellate-court intervention is governed by the same standards as in district court).

A party may intervene as of right pursuant to Federal Rule of Civil Procedure 24(a) if: (1) the intervention motion is timely, (2) the movant has a cognizable interest in the case, (3) the movant's absence from the case will impair its ability to protect its interests, and (4) the movant's interests are inadequately represented by the existing parties. *See Williams & Humbert, Ltd. v. W&H Trade Marks (Jersey) Ltd.*, 840 F.2d 72, 74 (D.C. Cir. 1988).

This Court has, at times, indicated that Article III standing is a prerequisite to intervention, even by parties seeking to intervene as respondents. *See, e.g.*, *Deutsche Bank Nat. Trust Co. v. FDIC*, 717 F.3d 189, 193 (D.C. Cir. 2013); *Military Toxics Project v. EPA*, 146 F.3d 948, 953-54 (D.C. Cir. 1998); *but see Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019) (explaining it is "not incumbent" on an intervenor to demonstrate standing when not invoking court's jurisdiction). Nonetheless, this Court has held that "any person who satisfies Rule 24(a) will also meet Article III's standing requirement." *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003); *accord Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003).

As discussed below, EEI satisfies the requirements of Federal Rule of Civil

Procedure 24(a).[7] EEI also meets any standing test that applies to intervention.

## II.    EEI Meets the Criteria for Intervention.

Fossil fuel-based EGUs are required to comply with any applicable GHG emission standards promulgated under CAA section 111. EEI members are obligated to meet the standards of performance for new and reconstructed stationary-combustion-turbine EGUs in the Final Rules. EEI members will also be working with States to develop plans that comport with the BSER for existing fossil fuel-fired steam generating units in the Final Rules, within a defined timeframe, and they must then comply with the standards of performance specified in those plans. As a result, EEI members and their customers would be adversely affected if this Court vacated and/or remanded certain key aspects of the Final Rules which, through subcategorization of units and other mechanisms, provide important compliance flexibility for EGUs operated by EEI members. As directly regulated entities, EEI members' standing is self-evident. Accordingly, the Court should grant EEI's motion to intervene.

---

[7] For these same reasons, EEI also meets the requirements for permissive intervention set forth in Federal Rule of Civil Procedure 24(b) of timeliness and no undue delay, *infra* § II.A., and a defense with a common question of law or fact, *infra* § II.B.

## A. EEI's motion is timely.

When evaluating the timeliness of a motion to intervene, the Court will consider the time that has passed since the case was filed, the likelihood of prejudice to the existing parties, the purpose for which intervention is sought, and the need for intervention to preserve the proposed intervenor's rights. *See United States v. British Am. Tobacco Australian Servs.*, 437 F.3d 1235, 1238 (D.C. Cir. 2006).

EEI's motion to intervene is timely. On May 9, 2024, West Virginia along with a number of other States filed a petition for review (Doc. 2053599 (No. 24-1120)); as did Ohio and Kansas (Doc. 2053609 (No. 23-1211)); National Rural Electric Cooperation Association (Doc. 2053624 (No. 24-1122)); and National Mining Association and America's Power (Doc. 2053706 (No. 24-1124)). On May 10, 2024 Oklahoma Gas and Electric Company filed a petition for review (Doc. 2053908 (No. 24-1126)), as did Electric Generators for a Sensible Transition (Doc. 2054552 (No. 24-1128)). On May 20, 2024, United Mine Workers of America filed a petition for review (Doc. 2055241 (No. 24-1142)), as did International Brotherhood of Electrical Workers (Doc. 2055265 (No. 24-1143)), and International Brotherhood of Boilermakers (Doc. 2055279 (No. 24-1144)) And on May 21, 2024, Midwest Ozone Group filed a petition for review (Doc. 2055472 (No. 24-1146)). *See also, e.g.* Clerk's Orders, No. 24-1120 (Docs. 2053915, 2055477) (consolidating

cases). This motion is therefore being filed within the 30-day time period for intervention specified in Federal Rule of Appellate Procedure 15(d).

**B.**  ***EEI and its members have direct and significantly protectable interests in this case which may be impaired by an adverse disposition.***[8]

This Court requires a "significantly protectable" interest to intervene, *see S. Christian Leadership Conference v. Kelley*, 747 F.2d 777, 779 (D.C. Cir. 1984) (citation omitted), but the interest test is flexible and serves as "a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967). A movant can demonstrate a "legally protectable" interest by showing that it stands to "gain or lose by the direct legal operation and effect of the judgment." *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1292 (D.C. Cir. 1980) (citation omitted). With respect to impairment, Federal Rule of Civil Procedure 24(a) requires only that a party seeking intervention be "so situated that disposing of the action *may* as a practical matter impair or impede the movant's ability to protect its interest." EEI and its members meet both the interest and impairment requirements.

---

[8] The second and third criteria for intervention are related, thus EEI discusses them together.

Courts have routinely recognized that when objects of governmental regulation are involved, "there is ordinarily little question that the action or inaction has caused [them] injury." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992); *CropLife Am. v. EPA*, 329 F.3d 876, 884 (D.C. Cir. 2003) (if there is "no doubt" a rule causes injury to a regulated party, standing is "clear"); *Military Toxics Project v. EPA*, 146 F.3d 948, 954 (D.C. Cir. 1998) (trade association had standing in challenge to EPA regulation where some of its members were subject to the regulation). This Circuit has consistently granted requests by regulated entities to intervene as Respondents when EPA regulations are challenged. *See, e.g.*, *Sierra Club v. EPA*, No. 13-1112 (Doc. 1436907) (D.C. Cir. May 20, 2013) (order granting trade association's motion to intervene in a petition to review a CAA rulemaking governing Portland cement manufacturing). Here, EEI members—privately-owned utilities that own and operate many of the electric generation units subject to the Final Rules—will be regulated under the Final Rules, and thus are objects of the very governmental regulation at issue. That is why EEI and its members submitted extensive comments on the Proposed Rules.[9]

For these reasons, EEI members also meet the Article III standing

---

[9] *See* EEI comments at 7 ("As many EEI member companies are owners and operators of the new and existing fossil-based electric generating units (EGUs or units) that will be regulated by any final rules, they are uniquely qualified to provide feedback on EPA's proposals."); *see also infra* n.10.

requirements in this Circuit.[10] *See, e.g., Roeder*, 333 F.3d at 233; *Fund for Animals, Inc.*, 322 F.3d at 735 (recognizing that the interest requirement under Federal Rule of Civil Procedure 24(a) is met when the proposed intervenor has Article III standing). EEI members are the objects of the Final Rules under review. Changes to certain important aspects of the Final Rules as a result of this litigation, including potential rejection of certain subcategories or compliance flexibilities for EGUs to meet the section 111 standards of performance, would impose significant additional compliance burdens on EEI members.

EEI and its members commented extensively on the Proposed Rules, including in support of EPA's authority to subcategorize emission sources and set a unique BSER for each subcategory.[11] EEI and its members also supported

---

[10] Associations such as EEI have associational standing to litigate on behalf of their members when: (i) their members would have standing to sue individually; (ii) the interests they seek to protect are germane to their purpose; and (iii) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). The interests of EEI members, who operate EGUs covered by the Final Rules, may be harmed should certain of the Petitioners prevail in their challenges. EEI members thus would have standing to intervene in their own right. Moreover, the interests EEI seeks to protect are germane to its purposes, and individual member participation is not required because Petitioners are seeking equitable relief, not money damages. *See United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 553-54 (1996).

[11] *See* EEI Supplemental Comments at 10 ("Importantly, EPA's subcategories for coal-based units will provide notable additional certainty for grid planners and others charged with maintaining the reliability of the grid because they will provide concrete information about the expected time horizons for when specific units are

compliance flexibilities provided in EPA's Proposal, allowing States and units to meet the section 111 standards through mechanisms other than BSER (*e.g.*, emission trading and averaging, mass-based approaches, setting of alternative standards).[12] The resolution of these and other issues presented by the Final Rules will directly impact EEI members' interests, and EEI's ability to protect those interests will be impaired as a practical matter if it is not allowed to participate in this litigation.

---

going to retire and no longer provide services to the grid. This will allow for future planning to replace those assets in an orderly fashion."); Entergy Services, LLC, *Proposed Rule – New Source Performance Standards for Greenhouse Gas Emissions From New, Modified, and Reconstructed Fossil Fuel-Fired Electric Generating Units; Emission Guidelines for Greenhouse Gas Emissions From Existing Fossil Fuel-Fired Electric Generating Units, and Repeal of the Affordable Clean Energy Rule, 88 Fed. Reg. 33240 (May 23, 2023)* at 3 (Aug. 8, 2023), EPA-HQ-OAR-2023-0072-0728 ("Entergy generally supports the comments submitted by … the Edison Electric Institute (EEI)…"); *id.* at 4 ("Entergy supports EPA's proposed subcategories [for existing coal- and natural gas-fired steam generating units]"); Dominion Energy, Inc., *Comments on EPA's Proposal on New Source Performance Standards for Greenhouse Gas Emissions from New, Modified, and Reconstructed Fossil Fuel-Fired Electric Generating Units, Emission Guidelines for Greenhouse Gas Emissions from Existing Fossil Fuel-Fired Electric Generating Units, and Repeal of the Affordable Clean Energy Rule* at 5 (Aug. 8, 2023) (Dominion Comments), EPA-HQ-OAR-2023-0072-0529 ("The company … appreciates EPA's inclusion of subcategories that allow consideration of various capacity and operational scenarios.").

[12]  *See* EEI Supplemental Comments at 22 ("Key design elements that EPA incorporated into the Proposed 111 Rules—which include the use of subcategories and significant compliance flexibility for states and units—should be finalized ..."); Dominion Comments at 5 ("We … appreciate EPA's consideration of flexibilities in the proposal …").

***C.  No other party to the litigation adequately represents EEI's interests.***

EEI readily meets any inadequate-representation requirement that Federal Rule of Appellate Procedure 15(d) may incorporate. The burden of demonstrating inadequate representation "is not onerous," and EEI "need only show that representation of [its] interest 'may be' inadequate, not that representation will in fact be inadequate." *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)).

Here, none of the existing parties can adequately represent EEI's interests. EEI expects some Petitioners to challenge EPA's interpretation of its authority under CAA section 111. Further, some Petitioners' challenges may concern important aspects of the Final Rules that EEI and its members support and rely on, such as (but not limited to) subcategorization, efficiency-based standards, exemption of certain units, and/or compliance flexibilities, and thus EEI should have the opportunity to defend against such attacks.

Nor does EPA share the same interests as EEI. As a governmental entity "charged by law with representing the public interest of its citizens," EPA must avoid advancing the "narrower interest" of certain businesses "at the expense of its representation of the general public interest." *Dimond*, 792 F.2d at 192-93; *see also Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1117 (10th Cir. 2002) ("[T]he government's prospective task of protecting not only the interest of

the public but also the private interest of the petitioners in intervention is on its face impossible and creates the kind of conflict that satisfies the minimal burden of showing inadequacy of representation." (internal quotation marks and citation omitted)); *County of San Miguel, Colo. v. MacDonald*, 244 F.R.D. 36, 48 (D.D.C. 2007) ("The District of Columbia Circuit has 'often concluded that government entities do not adequately represent the interests of aspiring intervenors.'" (quoting *Fund for Animals*, 322 F.3d at 736)). EPA is not well-suited to represent the interests of EEI members in this litigation, which are focused on avoiding the unsupported or unjustified addition of costly and burdensome regulatory requirements. Indeed, the interests of EPA and EEI members sometimes diverge, since EPA has regulatory authority under the CAA, and EEI members are often targets of that regulation.

But closer alignment between EPA's and EEI's interests "[would] not necessarily mean that adequacy of representation is ensured." *NRDC v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977) (concluding that the interests of companies seeking to intervene on EPA's behalf were "concerned primarily with the regulation that affects their industries" and that the companies' "participation in defense of EPA decisions that accord with their interest may also be likely to serve as a vigorous and helpful supplement to EPA's defense"); *see also Trbovich*, 404 U.S. at 538 & n.10 (finding a prospective intervenor met his "minimal" burden of showing possible

inadequate representation of his interests by the government even where a statute expressly obligated the Secretary of Labor to serve his interests).

Here, EEI does not support all aspects of the Final Rules but does support components of the Final Rules. The unique perspectives that EEI brings to this case, including EEI members' knowledge, expertise, and practical experiences on the technical and record issues that are key to the Final Rules, will supplement EPA's defense of the Final Rules and aid the Court in resolving this case.

## CONCLUSION

For the foregoing reasons, EEI requests that this Court grant its motion for leave to intervene in support of Respondents in the above-captioned consolidated proceedings.

Respectfully submitted,

/s/ Amanda Shafer Berman
Thomas A. Lorenzen
Amanda Shafer Berman
Elizabeth B. Dawson
Siyi Shen
Crowell & Moring LLP
1001 Pennsylvania Ave., NW
Washington, DC 20004
Dated: May 22, 2024          (202) 624-2500
tlorenzen@crowell.com

Counsel for Edison Electric Institute

**CERTIFICATE OF COMPLIANCE**

The foregoing motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 4404 words, excluding those parts exempted by Fed. R. App. P. 32(f).

This motion also complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point, Times New Roman font.

*/s/ Amanda Shafer Berman*
Amanda Shafer Berman

**CERTIFICATE OF SERVICE**

Pursuant to Rule 25 of the Federal Rules of Appellate Procedure and the Circuit Rules, I hereby certify that have this 22nd day of May, 2024, served a copy of the foregoing document electronically through the Court's CM/ECF system on all registered counsel.


*/s/ Amanda Shafer Berman*
Amanda Shafer Berman

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

|  |  |
|---|---|
| STATE OF WEST VIRGINIA, el al., <br><br> Petitioners, <br><br> v. <br><br> U.S. ENVIRONMENTAL PROTECTION AGENCY and MICHAEL S. REGAN, Administrator, U.S. Environmental Protection Agency, <br><br> Respondents. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case. No. 24-1120 <br> ) (and consolidated cases) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## CERTIFICATE AS TO PARTIES

### 1. Parties in this Court

The Petitioners in these consolidated cases are State of West Virginia, State of Alabama, State of Alaska, State of Arkansas, State of Florida, State of Georgia, State of Idaho, State of Indiana, State of Iowa, State of Kansas, Commonwealth of Kentucky, State of Louisiana, State of Mississippi, State of Missouri, State of Montana, State of Nebraska, State of New Hampshire, State of North Dakota, State of Ohio, State of Oklahoma, State of South Carolina, State of South Dakota, State of Tennessee, State of Texas, State of Utah, Commonwealth of Virginia, State of Wyoming, National Mining Association, America's Power, Oklahoma Gas and

Electric Company, Electric Generators for a Sensible Transition, United Mine Workers of America, International Brotherhood of Electrical Workers and International Brotherhood of Boilermakers, and Midwest Ozone Group.

The Respondents in this case are the U.S. Environmental Protection Agency and Michael Regan, in his official capacity as Administrator, U.S. Environmental Protection Agency.

## 2. Intervenors in this Court

As of this time, there are no intervenors. On May 13, 2024, the following entities moved to intervene in this case: American Lung Association, Clean Air Council, the American Public Health Association, Clean Wisconsin, and Natural Resources Defense Council. On May 16, 2024, the following entities moved to intervene in this case: State of New York, State of Arizona, State of Colorado, State of Connecticut, District of Columbia, State of Delaware, State of Illinois, State of Hawaii, State of Maryland, State of Maine, State of Michigan, Commonwealth of Massachusetts, State of Minnesota, State of New Mexico, State of North Carolina, State of Oregon, Commonwealth of Pennsylvania, State of Rhode Island, State of Vermont, State of Washington, State of Wisconsin, City of Boulder, City of Chicago, City and County of Denver, City of New York, and California Air Resources Board.

### 3. Amici curiae in this Court

As of this time, there are no amici curiae.

/s/ Amanda Shafer Berman
Amanda Shafer Berman

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| _____ ) | |
| STATE OF WEST VIRGINIA, el al., ) | |
| ) | |
| Petitioners, ) | |
| ) | |
| v. ) | Case. No. 24-1120 |
| ) | (and consolidated cases) |
| U.S. ENVIRONMENTAL PROTECTION ) | |
| AGENCY and MICHAEL S. REGAN, ) | |
| Administrator, U.S. Environmental Protection ) | |
| Agency, ) | |
| ) | |
| Respondents. ) | |
| _____ ) | |

**RULE 26.1 DISCLOSURE STATEMENT OF
EDISON ELECTRIC INSTITUTE**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26.1, Intervenor Edison Electric Institute (EEI) states that it is a national association of investor-owned electric utility companies. It has no parent companies, subsidiaries or affiliates. EEI has no outstanding shares or debt securities in the hands of the public, and no publicly-owned company has a 10% or greater ownership interest in EEI.

Respectfully submitted,

*/s/ Amanda Shafer Berman*
Thomas A. Lorenzen
Amanda Shafer Berman
Elizabeth B. Dawson
Siyi Shen
Crowell & Moring LLP
1001 Pennsylvania Ave., NW
Washington, DC 20004
(202) 624-2500
tlorenzen@crowell.com

Dated: May 22, 2024

*Counsel for Edison Electric Institute*