ORAL ARGUMENT NOT YET SCHEDULED

No. 24-1120

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

STATE OF WEST VIRGINIA, STATE OF INDIANA, *et al.*,

*Petitioners*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and
MICHAEL S. REGAN, Administrator,
United States Environmental Protection Agency,

*Respondents.*

**PETITIONERS' REPLY SUPPORTING THEIR MOTION TO STAY**

THEODORE E. ROKITA
  ATTORNEY GENERAL

JAMES A. BARTA
 *Solicitor General*

OFFICE OF THE ATTORNEY
GENERAL OF INDIANA
302 W. Washington St.
Indianapolis, IN 46204
Phone: (317) 232-0709
james.barta@atg.in.gov

*Counsel for State of Indiana*

PATRICK MORRISEY
  ATTORNEY GENERAL

MICHAEL R. WILLIAMS
 *Solicitor General*
 *Counsel of Record*
FRANK A. DAME
 *Assistant Solicitor General*

OFFICE OF THE WEST VIRGINIA
ATTORNEY GENERAL
1900 Kanawha Blvd., East
Building 1, Room E-26
Charleston, WV 25305
Phone: (304) 558-2021
michael.r.williams@wvago.gov
frankie.a.dame@wvago.gov

*Counsel for State of West Virginia*

[additional counsel listed after signature page]

## TABLE OF CONTENTS

Introduction ....................................................................................................1

Argument .......................................................................................................1

I.      The States Will Likely Win ...................................................................1

    A.      Section 111 doesn't allow impossible standards .............................1

    B.      The Rule neuters the States' authority ...........................................5

II.     A Stay Will Avoid Irreparable Harm .....................................................7

III.    Other Parties' And The Public's Interest Favor A Stay ........................11

Conclusion ....................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Lung Ass'n v. EPA*,
  985 F.3d 914 (D.C. Cir. 2021)..............................................................7

*Am. Elec. Power Co. v. Connecticut*,
  564 U.S. 410 (2011)..................................................................3, 8

*C-SPAN v. FCC*,
  545 F.3d 1051 (D.C. Cir. 2008)..........................................................6

*District of Columbia v. U.S. Dep't of Agric.*,
  444 F. Supp. 3d 1 (D.D.C. 2020) ......................................................11

*Hollingsworth v. Perry*,
  558 U.S. 183 (2010).............................................................................8

*Kentucky v. Biden*,
  57 F.4th 545 (6th Cir. 2023) ..............................................................9

*League of Women Voters of U.S. v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016) ...............................................................11

*Ledbetter v. Baldwin*,
  479 U.S. 1309 (1986).......................................................................10

*Massachusetts v. EPA*,
  549 U.S. 497, 529 (2007).....................................................................3

*Nat'l-Southwire Aluminum Co. v. EPA*,
  838 F.2d 835 (6th Cir. 1988)..............................................................5

*Portland Cement Ass'n v. Train*,
  513 F.2d 506 (D.C. Cir. 1975)............................................................2

*S. Bay United Pentecostal Church v. Newsom*,
  140 S. Ct. 1613 (2020) .......................................................................8

*Students for Fair Admissions, Inc. v. President & Fellows of
  Harvard Coll.*,
  600 U.S. 181 (2023).............................................................................4

*West Virginia v. EPA,*
　　577 U.S. 1126 (2016) ................................................................8

*West Virginia v. EPA,*
　　597 U.S. 697 (2022)......................................................2, 3, 4, 5, 6

*West Virginia v. EPA,*
　　No. 15-1363 (D.C. Cir.) ............................................................7

*Wyoming v. U.S. Dep't of the Interior,*
　　493 F. Supp. 3d 1046 (D. Wyo. 2020) ......................................6

**Statute**

42 U.S.C. § 7411 ..........................................................................5, 6

**Other Authorities**

40 Fed. Reg. 53,340 (Nov. 17. 1975) ............................................7

88 Fed. Reg. 80,480 (Nov. 17, 2023) ............................................7

89 Fed. Reg. 39,798 (May 9, 2024) ..............................................10

## INTRODUCTION

In its response, EPA tries to make itself largely unaccountable to anyone. It believes uttering the words "technology-based standards," EPA.Opp.21, overcomes charges that it's repeating its errors from the last go-round. It thinks the Court must defer to judgments about real-world practicalities so much that the Court can't scrutinize EPA's hope that coal plants will hit hurried timing and targets. And it supposes it can pare state discretion to the bone—in a cooperative-*federalism* framework, no less—just because it has done similar things before.

All that's wrong. The Rule sets undemonstrated, unachievable standards that States cannot mitigate except in the rarest EPA-controlled circumstances. It remakes the power sector by compelling otherwise avoidable retirements when electricity grids are already struggling. And these unlawful efforts saddle Petitioners with immediate and irrecoverable costs. The Court should stay the Rule.

## ARGUMENT

### I.     The States Will Likely Win.

#### A.     Section 111 doesn't allow impossible standards.

EPA calls the Rule a "return[] to its traditional manner of regulation"—technology-based standards with only incidental effects on generation. EPA.Opp.22. But EPA cannot really dispute that the Rule will drive plants to retire. So the question stands: did Congress let EPA decide if "it would be

1

'best' if coal made up a much smaller share of national electricity generation"? *West Virginia v. EPA*, 597 U.S. 697, 728 (2022).   It didn't.

For starters, this issue raises "statutory interpretation questions," not quibbles with the "reasonableness of EPA's technical judgments." EPA.Opp.20.  Whether "best systems" qualify as "adequately demonstrated" and "achievable" are statutory requirements different from deferential arbitrary-and-capricious review.  Mot.2, 6.  So EPA is wrong that the analysis "end[s]" if it "considered all relevant factors" and "articulated a rational connection" between the facts and its choices.  EPA.Opp.24 (cleaned up).

And CCS and co-firing are not adequately demonstrated or achievable at the Rule's target levels and timeframes.  EPA leaps from reasonable, record-grounded "projection[s]" into choosing "best systems" with lightning-fast timelines and burdens "greater than the industry could bear *and survive*." *Portland Cement Ass'n v. Train*, 513 F.2d 506, 508 (D.C. Cir. 1975) (emphasis added).  Even assuming each component of CCS is theoretically viable, EPA.Opp.39, EPA never demonstrates how *non-regulated parties* will build out pipelines and sequestration facilities in time.  For instance, it can't explain away Department of Energy timing estimates that double the Rule's, EPA.Opp.88 & n.32, by citing a project that's taking more time than DOE projected, not less, Ex.17, McLennan.Decl. ¶¶21-52.  And EPA confirms it's not dealing in reality when it relies on an old press release promising "commercial scale" 90% capture *by 2015*.  EPA.Opp.40.  In contrast, the record, the States' declarants, and other Petitioners here on reply show the

2

Rule demands the impossible.  *E.g.*, Ex.20, Tschider.Decl. ¶¶10-18; Ex.23, Hochstetler.Decl. ¶¶26-32.

Whether EPA can interpret Section 111's terms to let it regulate most coal plants out of existence triggers another statutory question, as well: the major-questions inquiry.  Stretching "adequately demonstrated" to cover not-yet-achieved results raises the same concerns as when EPA stretched the definition of "system" to include generation shifting.  Though EPA's view of "system" was in the realm of "definitional possibilities," "precedent counsel[ed] skepticism" toward "empower[ing]" EPA that way.  *West Virginia*, 597 U.S. at 732.  So too here.  Allowing EPA to employ an elastic view of "adequately demonstrated" and "achievable" would enable it to "force a nationwide transition away from the use of coal" that Congress has not clearly authorized.  *Id.* at 735.

EPA's cases confirm it.  *Massachusetts v. EPA* held that an "unambiguous" statutory term ("any air pollution agent") empowered EPA to "*regulate* emissions"—in contrast to the more serious power to "ban."  549 U.S. 497, 529, 531 (2007) (emphasis in original).  *American Electric Power Co. v. Connecticut*, 564 U.S. 410 (2011), likewise didn't affirm EPA's power to regulate despite "considerable collateral consequences."  EPA.Opp.21.  Quite the opposite: it "said nothing about the ways in which Congress intended EPA to exercise its power."  *West Virginia*, 597 U.S. at 730.

That leaves *West Virginia* itself.  EPA says CCS and co-firing are "technological systems" that do not "simply announc[e] what the market share

of coal" must be. EPA.Op.23 (quoting *West Virginia*, 597 U.S. at 731 n.4); *see also* NGO.Opp.13-14; States.Opp.26-27. But *West Virginia* didn't hold that all technology-based systems are legal, just as it didn't say EPA stumbled only because it announced preferred market shares directly. The Court probed the "nature of the question" and the "highly consequential power" at stake. *West Virginia*, 597 U.S. at 721, 724 (cleaned up). Here, just as there, the Rule will drive more than "an incidental loss of coal's market share." *Id.* at 731 n.4. If businesses cannot comply at reasonable cost (or any cost), Mot.14-15, then EPA cannot hide behind vague "business reasons" as the trigger for otherwise unanticipated retirements in the years ahead, EPA.Opp.24-25. *West Virginia* tells us practical realities matter.

Indeed, the Rule may be worse than EPA's prior efforts. The Clean Power Plan at least tried to balance "how much of a switch" in generation was "practically feasible." *West Virginia*, 597 U.S. at 729. Now, EPA *does not disclaim plant closures*—it just declares them irrelevant because plants "will voluntarily elect to retire" instead of EPA "mak[ing] that choice." EPA.Opp.28. But when Congress withholds power to act directly, it also withholds power to act indirectly (or coercively). *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 230 (2023). Congress did not clearly authorize EPA to set standards that "direct existing sources to effectively cease to exist." *West Virginia*, 597 U.S. at 728 n.3.

### B.    The Rule neuters the States' authority.

The Rule also plays loose with the States' power to "set the actual rules" for existing sources. *West Virginia*, 597 U.S. at 710. EPA has an important role. But Congress retained an equally important role for the States: they can meaningfully tailor standards based on their own judgments—not just ones EPA would make itself. The Rule gets that latter role wrong.

*First*, EPA deals unfairly with the statute. State plans must "reflect[]" EPA's guidelines, not follow them lockstep, and EPA "shall permit" source-specific variances. 42 U.S.C. § 7411(d)(1). Those directives mean Section 111(d) "gives substantial latitude to the states in setting emission standards." *Nat'l-Southwire Aluminum Co. v. EPA*, 838 F.2d 835, 838 (6th Cir. 1988).

EPA again weaponizes *West Virginia*, saying EPA's power to "decide[] the amount of pollution reduction that must ultimately be achieved" allows it to straitjacket state discretion. EPA.Opp.31 (quoting *West Virginia*, 597 U.S. at 710). Yet *West Virginia* focused on EPA's role in setting a best system and the amount of achievable emission limitations flowing from it. It did not talk—at all—about the States' *separate* authority to tailor the guidelines based on source-specific factors. An opinion that doesn't reach an issue doesn't "foreclose[]" it, States.Opp.18, so the Court's discussion of EPA's task in one part of the statute can't erase the States' discretion elsewhere.

EPA's role in approving "satisfactory" plans doesn't empower it to command and control the States, either. 42 U.S.C. § 7411(d)(2)(A). State tailoring isn't limitless. EPA.Opp.31. But neither is EPA's review.

5

"Satisfactory" is a low bar, and EPA may reject "only" unsatisfactory state plans. *Wyoming v. U.S. Dep't of the Interior*, 493 F. Supp. 3d 1046, 1070 n.23 (D. Wyo. 2020). So EPA lacks broad "discretion" to reject state plans, States.Opp.20—Congress gave it a *non*discretionary duty to "permit" the States' reasonable judgments. 42 U.S.C. § 7411(d)(1).

*Second*, EPA downplays the Rule's anti-state-discretion bias. It implies the Rule simply requires States to "justif[y]" reasonable variances in their plans. *E.g.*, EPA.Opp.31. But the Rule greenlights discretion in only "exceptional circumstances." Mot.13 (quoting 89 Fed. Reg. 39,798, 39,890 n.674 (May 9, 2024)). Requiring exceedingly persuasive reasons why States can exercise discretion Congress said EPA *must* allow is wrong. That's also why reciting Congress's promised discretion—a line EPA faults the States for omitting, EPA.Opp.32—doesn't justify a Rule that shrinks discretion to nothing.

Indeed, EPA's one paragraph defending its "fundamental differences" requirement for States mostly asks the Court to bypass the issue because another case raises similar challenges. EPA.Opp.34. Yet EPA never explains how it can make the same legal error twice and answer for it once. (It rightly doesn't adopt the lone support its intervenors muster—the standing holding in *C-SPAN v. FCC*, 545 F.3d 1051 (D.C. Cir. 2008) (cited at States.Opp.19-20)—because "little question" exists that the Rule injures the States. *West Virginia*, 597 U.S. at 719 (cleaned up).) On the merits, EPA says it's just "restat[ing] factors" from its earlier regulations. EPA.Opp.34. It quotes

6

nothing to back that assertion up, though—the old rules it cites focus on "reasonable" factors, 40 Fed. Reg. 53,340, 53,347 (Nov. 17. 1975), and the statutory basis for *allowing* variances, 88 Fed. Reg. 80,480, 80,519 (Nov. 17, 2023).  They don't say States must prove "exceptional circumstances" or "fundamental differences" before they can do what Congress said they can.

## II.    A Stay Will Avoid Irreparable Harm.

On irreparable harm, EPA is wrong both in its general critiques and in the specifics.

Starting with the general, EPA insists the timeframe for irreparable harm is a year because litigation supposedly won't take longer.  EPA.Opp.84. But the *full* timeline for potential review matters.  It's not "speculative" to consider potential Supreme Court review, EPA.Opp.84, as the Court intervened both times the earlier rules went up.  And EPA's one-year estimate in this Court is bullish.  This Court put a challenge in abeyance 18 months after the first rule came down.  Order, *West Virginia v. EPA*, No. 15-1363 (D.C. Cir. Apr. 28, 2017).  Its decision on the second took 18 months.  *Am. Lung Ass'n v. EPA*, 985 F.3d 914, 937 (D.C. Cir. 2021), *rev'd and remanded*, *West Virginia*, 597 U.S. 697.  So the Court doesn't even have to decide if EPA's request for extra time to brief *these* motions belies its assurance that "[m]erits disposition could even be expedited."  EPA.Opp.84.  This rulemaking's interconnected, years-long history confirms that the Court should weigh harms beyond a year.

Nor should the Court defer to EPA's record findings whenever they "intertwine[] with" evidence of irreparable harm.  EPA.Opp.84-85.  EPA gives

7

zero support for importing merits-stage deference (to the extent it exists) into the irreparable-harm analysis. The Supreme Court didn't suggest it ignored the parties' declarations when it corrected this Court's last failure to issue a stay. *West Virginia v. EPA*, 577 U.S. 1126 (2016). EPA's cases don't say otherwise: *American Electric Power*, 564 U.S. 410, isn't about equitable relief. And *South Bay* dealt with an injunction's "significantly higher justification than a request for a stay" at a time local officials were "actively shaping their response to changing facts on the ground." *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613-14 (2020) (Roberts, C.J., concurring). Regardless, the Rule predicts nothing about individual businesses' and States' costs—much less rebuts the movant-specific harms the record shows are "likel[y]." *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010).

Moving to the specifics, EPA mainly insists that little need happen for at least a year. But without a stay, States and others must make key decisions and take preliminary steps—and trigger all the costs and consequences that come with them—now.

On the industry side, changed bargaining positions in view of the Rule are already "fundamentally disrupting" utilities. Ex.20, Tschider.Decl. ¶¶67-70. Companies face "immediate decisions" that "cannot be delayed." Ex.4, Webb.Decl. ¶7; *see also*, *e.g.*, Ex.11, Huston.Decl. ¶19; Ex.12, Purvis.Decl. ¶¶58a, 68. Even sources that have started already worry if they'll make the Rule's deadlines. Ex.14, McCollam.Decl. ¶¶19-20, 23, 31-33; Ex.17, McLennan.Decl. ¶76.

8

These rapid changes spell serious trouble for electricity reliability. EPA largely calls on (misplaced) deference, EPA.Opp.83-85, to brush off the many additional retirements grid operators and other experts foresee, Mot.16-17. But the harm from even "incremental[]," EPA.Opp.91, Rule-driven plant closures will be irreparable. Reliability issues are at a tipping point—prematurely "losing even one or two" more plants would have sobering consequences. Ex.25, Parker.Decl. ¶12; *see also* Mot.17-18. EPA promises plants won't close sooner than "seven years from now," EPA.Opp.91, but ignores that planning in this sector extends at least a decade, Mot.18-19. And EPA's own declarant admits EPA conducted only a resource *adequacy* study—just part of what a full reliability assessment needs. EPA.Ex.1 ¶108; *cf.* Ex.21, Vigesaa.Decl. ¶¶10-12 (describing flaws in EPA's study).

For the States, EPA says they face no "resulting sanctions" if they don't submit timely plans because EPA would "take over the regulatory burden" for them and impose a federal plan. EPA.Opp.103. EPA may not think much of giving up regulatory power in an area of traditional authority, but that kind of sovereignty loss is quintessential irreparable harm. Mot.20.

To avoid that fate, States will "incur unrecoverable compliance costs," *Kentucky v. Biden*, 57 F.4th 545, 556 (6th Cir. 2023), "start[ing] immediately," Ex.5, Boylan.Decl. ¶3; *see also*, *e.g.*, Ex.15, Semerad.Decl. ¶¶6, 17; Ex.30, Lane.Decl. ¶8. EPA dismisses these costs as "limited and reasonable." EPA.Opp.102-03. But the experienced agencies doing the work say they're "immense," Ex.2, Hasten.Decl. ¶16; "significant," Ex.3, Osborne.Decl. ¶18;

Ex.11, Huston.Decl. ¶32; Ex.31, Parfitt.Decl. ¶4; and "substantial," Ex.8, Stuckey.Decl. ¶9; Ex.14, McCollam.Decl. ¶41.  Nor is the lift typical of what's required in implementing other air-pollution rules.  EPA.Opp.102-03.  Apart from its technical complexity, the Rule requires state agencies, utilities, grid operators, and federal regulators to coordinate extensively.  *See*, *e.g.*, Ex.28, Crowder.Decl. ¶¶19, 29; Ex.31, Parfitt.Decl. ¶13.  Wrangling these many interests—and getting legislative sign-off—will take at least a year beyond ordinary rulemaking calendars.  Ex.11, Huston.Decl. ¶5; Ex.22, Stegmann.Decl. ¶12.  Even EPA's declarant admits implementing the Rule will be uncommonly complicated.  EPA.Ex.1 ¶86.

These factors explain why the specific costs dwarf EPA's cumulative $12 million guess.  *E.g.*, Ex.1, Gore.Decl. ¶10; Ex.15, Semerad.Decl. ¶¶13, 15; Ex.19, Fedorchak.Decl. ¶¶24-26; Ex.30, Lane.Decl. ¶¶23-24.  EPA criticizes West Virginia's numbers as too high, EPA.Opp.104, but West Virginia was the only State to submit a plan under the last set of rules, 89 Fed. Reg. at 39,838— its agencies know what to expect.  And even "low" numbers are significant because they often represent a "substantial portion" of department resources for States with budgets far lower than the federal government's.  Ex.31, Parfitt.Decl. ¶8.

Lastly, EPA is wrong that state "administrative costs" from "changing" federal programs rarely justify equitable relief.  *Ledbetter v. Baldwin*, 479 U.S. 1309, 1310 (1986) (Powell, J., in chambers).  Particularly where those "administrative burdens" and "expanding employment costs" tally up to

millions per State, *District of Columbia v. U.S. Dep't of Agric.*, 444 F. Supp. 3d 1, 33 (D.D.C. 2020), the Court should intervene.

### III.    Other Parties' And The Public's Interest Favor A Stay.

EPA can't use its concern over climate change to justify acting without regard for legality or consequence, EPA.Opp.105-07; seizing an unlawful form of power is illegal even without "any alternative," EPA.Opp.25.  Otherwise, agencies could act anytime they perceive a problem that Congress has—for whatever reason—not chosen to give them the power to address.  And "no public interest [lies] in the perpetuation of unlawful agency action," *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016), so nothing here "negates" the public-interest factor, EPA.Opp.108.  Regardless, a stay is justified even by EPA's telling.  Emission reductions won't start until at least 2028, *e.g.*, States.Opp.29; NGO.Opp.21, and EPA thinks litigation will end before compliance burdens kick in, EPA.Opp.84.  EPA cannot have it both ways: If Petitioners aren't harmed because there's so little to do in the short term, then the public won't be harmed if a stay formalizes that situation.  The Court should make the right equitable call now.

### CONCLUSION

The Court should stay the Rule.

Respectfully submitted,

THEODORE E. ROKITA
  ATTORNEY GENERAL

/s/ James A. Barta
James A. Barta
  Solicitor General

Office of the Attorney General
of Indiana
302 W. Washington St.
Indianapolis, IN 46204
Phone: (317) 232-0709
james.barta@atg.in.gov

Counsel for State of Indiana

PATRICK MORRISEY
  ATTORNEY GENERAL

/s/ Michael R. Williams
Michael R. Williams
  Solicitor General
  Counsel of Record
Frank A. Dame
  Assistant Solicitor General

Office of the Attorney General of
West Virginia
State Capitol Complex
Building 1, Room E-26
Charleston, WV 25301
(304) 558-2021
michael.r.williams@wvago.gov
frankie.a.dame@wvago.gov

Counsel for State of West Virginia

STEVE MARSHALL
  ATTORNEY GENERAL

/s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr.
 *Solicitor General*

Office of the Attorney General
State of Alabama
501 Washington Avenue
P.O. Box 300152
Montgomery, AL 36130-0152
 (334) 242-7300
Edmund.LaCour@AlabamaAG.gov

*Counsel for State of Alabama*

TREG TAYLOR
  ATTORNEY GENERAL

/s/ Garrison Todd
Garrison Todd
  *Assistant Attorney General*

Alaska Department of Law
1031 W. 4th Ave., Ste. 200
Anchorage, AK 99501
(907) 269-5100
garrison.todd@alaska.gov

*Counsel for State of Alaska*

TIM GRIFFIN
  ATTORNEY GENERAL

/s/ Nicholas J. Bronni
Nicholas J. Bronni
 *Solicitor General*
Dylan Jacobs
 *Deputy Solicitor General*

Office of the Arkansas Attorney
General
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 682-2007 (main)
Nicholas.Bronni@ArkansasAG.gov
Dylan.Jacobs@ArkansasAG.gov

*Counsel for State of Arkansas*

ASHLEY MOODY
  ATTORNEY GENERAL

/s Henry C. Whitaker
Henry C. Whitaker
 *Solicitor General*
James H. Percival
 *Chief of Staff*

Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
henry.whitaker@myfloridalegal.com
james.percival@myfloridalegal.com

*Counsel for State of Florida*

CHRISTOPHER M. CARR
  ATTORNEY GENERAL

/s/ Stephen J. Petrany
Stephen J. Petrany
  *Solicitor General*

Office of the Attorney General of
Georgia
40 Capitol Square, SW
Atlanta, GA 30334
(404) 458-3408
spetrany@law.ga.gov

*Counsel for State of Georgia*


BRENNA BIRD
  ATTORNEY GENERAL

/s/ Eric H. Wessan
Eric H. Wessan
  *Solicitor General*

Office of the Attorney General of
Iowa
1305 E. Walnut Street
Des Moines, IA 50319
(515) 823-9117
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov

*Counsel for State of Iowa*

RAÚL R. LABRADOR
  ATTORNEY GENERAL

/s/ Joshua N. Turner
Joshua N. Turner
  *Chief of Constitutional Litigation
  and Policy*
Alan M. Hurst
  *Solicitor General*

Office of the Idaho Attorney
General
P.O. Box 83720
Boise, ID 83720-0010
Tel:   (208) 334-2400
Josh.Turner@ag.idaho.gov
Alan.hurst@ag.idaho.gov

*Counsel for State of Idaho*


RUSSELL COLEMAN
  ATTORNEY GENERAL

/s/ Matthew F. Kuhn
Matthew F. Kuhn
  *Solicitor General*
Jacob M. Abrahamson
  *Assistant Solicitor General*

Office of Kentucky Attorney General
700 Capital Avenue, Suite 118
Frankfort, KY 40601
(502) 696-5300
Matt.Kuhn@ky.gov
Jacob.Abrahamson@ky.gov

*Counsel for the Commonwealth of
Kentucky*

14

LIZ MURRILL
  ATTORNEY GENERAL

/s/ J. Benjamin Aguiñaga
J. Benjamin Aguiñaga
  *Solicitor General*
Tracy Short
  *Assistant Attorney General*

Louisiana Department of Justice
1885 N. Third Street
Baton Rouge, LA 70804
(225) 326-6766
aguinagaj@ag.louisiana.gov
shortt@ag.louisiana.gov

*Counsel for State of Louisiana*

ANDREW BAILEY
  ATTORNEY GENERAL

/s/ Joshua M. Divine
Joshua M. Divine
  *Solicitor General*

Missouri Attorney General's Office
Post Office Box 899
Jefferson City, MO 65102
Tel. (573) 751-1800
Fax. (573) 751-0774
josh.divine@ago.mo.gov

*Counsel for State of Missouri*

LYNN FITCH
  ATTORNEY GENERAL

/s/ Justin L. Matheny
Justin L. Matheny
  *Deputy Solicitor General*

Office of the Mississippi Attorney
General
P.O. Box 220
Jackson, MS 39205-0220
(601) 359-3825
justin.matheny@ago.ms.gov

*Counsel for State of Mississippi*

AUSTIN KNUDSEN
  ATTORNEY GENERAL

/s/ Christian B. Corrigan
Christian B. Corrigan
  *Solicitor General*
Peter M. Torstensen, Jr.
  *Deputy Solicitor General*

Montana Department of Justice
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
(406) 444-2026
christian.corrigan@mt.gov
peter.torstensen@mt.gov

*Counsel for State of Montana*

15

MICHAEL T. HILGERS
  ATTORNEY GENERAL

/s/ Zachary A. Viglianco
Zachary A. Viglianco
  *Deputy Solicitor General*

Office of the Attorney General of
Nebraska
2115 State Capitol
Lincoln, NE 68509
(531) 739-7645
zachary.viglianco@nebraska.gov

*Counsel for State of Nebraska*

DREW H. WRIGLEY
  ATTORNEY GENERAL

/s/ Philip Axt
Philip Axt
  *Solicitor General*

Office of Attorney General of
North Dakota
600 E. Boulevard Ave., Dept. 125
Bismarck, ND 58505
(701) 328-2210
pjaxt@nd.gov

*Counsel for State of North Dakota*

JOHN FORMELLA
  ATTORNEY GENERAL

/s/ Mark W. Dell'Orfano
Mark W. Dell'Orfano
  *Assistant Attorney General*

New Hampshire Department of
Justice
1 Granite Place South
Concord, New Hampshire 03301-3271
(603) 271-1236
Mark.W.DellOrfano@doj.nh.gov

*Counsel for State of New Hampshire*

GENTNER DRUMMOND
  ATTORNEY GENERAL

/s/ Garry M. Gaskins, II
Garry M. Gaskins, II
  *Solicitor General*
Jennifer L. Lewis
  *Deputy Attorney General*

Office of the Attorney General of
Oklahoma
313 NE Twenty-First St.
Oklahoma City, OK 73105
(405) 521-3921
garry.gaskins@oag.ok.gov

*Counsel for State of Oklahoma*

16

ALAN WILSON
  ATTORNEY GENERAL

Robert D. Cook
  *Solicitor General*

/s/ J. Emory Smith, Jr.
J. Emory Smith, Jr.
  *Deputy Solicitor General*
Thomas T. Hydrick
  *Assistant Deputy Solicitor
  General*
Joseph D. Spate
  *Assistant Deputy Solicitor
  General*

Office of the Attorney General of
South Carolina
1000 Assembly Street
Columbia, SC 29201
(803) 734-3371
josephspate@scag.gov

*Counsel for State of South Carolina*

MARTY J. JACKLEY
  ATTORNEY GENERAL

/s/ Steven Blair
Steven Blair
  *Deputy Attorney General*

South Dakota Attorney General's
Office
1302 E. Highway 14, Suite 1
Pierre, SD 57501
(605) 773-3215
atgservice@state.sd.us

*Counsel for State of South Dakota*

17

JONATHAN SKRMETTI
   ATTORNEY GENERAL AND
REPORTER

/s/ J. Matthew Rice
J. Matthew Rice
  *Solicitor General*
Whitney Hermandorfer
  *Director of Strategic Litigation*

Office of the Attorney General and
Reporter of Tennessee
P.O. Box 20207
Nashville, TN 37202-0207
(615) 741-7403
Matt.Rice@ag.tn.gov
Whitney.Hermandorfer@ag.tn.gov

*Counsel for State of Tennessee*

KEN PAXTON
   ATTORNEY GENERAL

Brent Webster
  *First Assistant Attorney General*

James Lloyd
  *Deputy Attorney General for Civil*
  *Litigation*

Kellie E. Billings-Ray
  *Chief, Environmental Protection*
  *Division*

/s/ Wesley S. Williams
Wesley S. Williams
  *Assistant Attorney General*

Kateland R. Jackson
  *Assistant Solicitor General*

Office of the Attorney General of
Texas
Environmental Protection Division
P.O. Box 12548, MC-066
Austin, Texas 78711-2548
(512) 463-2012 | Fax: (512) 320-0911
Wesley.Williams@oag.texas.gov

*Counsel for State of Texas*

18

SEAN REYES
  ATTORNEY GENERAL

/s/ Stanford E. Purser
Stanford E. Purser
  *Solicitor General*

Office of the Utah Attorney General
160 E. 300 S., 5th Floor
Salt Lake City, Utah 84111
385-382-4334
spurser@agutah.gov

*Counsel for State of Utah*

JASON MIYARES
  ATTORNEY GENERAL

/s/ Erika L. Maley
Erika L. Maley
  *Solicitor General*
Kevin M. Gallagher
  *Principal Deputy Solicitor General*
Brendan T. Chestnut
  *Deputy Solicitor General*

Virginia Attorney General's Office
202 North 9th Street
Richmond, VA 23219
(804) 786-2071
emaley@oag.state.va.us
kgallagher@oag.state.va.us
bchestnut@oag.state.va.us

*Counsel for Commonwealth of Virginia*

BRIDGET HILL
  ATTORNEY GENERAL

/s/ D. David DeWald
D. David DeWald
  *Deputy Attorney General*

Office of the Attorney General of Wyoming
109 State Capitol
Cheyenne, WY 82002
(307) 777-7895
david.dewald@wyo.gov

*Counsel for State of Wyoming*

Dated: June 18, 2024

## CERTIFICATE OF COMPLIANCE

I certify that this reply complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 2597 words, excluding the parts exempted by Fed. R. App. P. 32(f).

I also certify that this reply complies with the requirements of Fed. R. App. P. 27(d)(1)(E), 32(a)(5)-(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point CenturyExpd BT font.

/s/ *Michael R. Williams*
Michael R. Williams