UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____
                                                )
STATE OF WEST VIRGINIA, et al.,    )
                                                )
                      Petitioners,    )
                                                )
v.                                                  )    No. 24-1120
                                                )    (and consolidated cases)
U.S. ENVIRONMENTAL              )
PROTECTION AGENCY, et al.,     )
                                                )
                      Respondents.    )
_____)

**RESPONDENTS' OPPOSITION TO
LOUISIANA PUBLIC SERVICE COMMISSION'S
MOTION TO LODGE**

      Intervenor Louisiana Public Service Commission improperly moves to "lodge" two documents that are part of the administrative record in this case. Mot., ECF#2078154 (Oct. 3, 2024). The Commission's belated characterizations of those documents are an attempt to impermissibly supplement the Commission's already-filed opening brief. The Commission's motion should be denied, and the arguments in it should be disregarded.

      The Commission moves to "lodge" two record documents attached to its motion: Attachment A, which is an excerpt from EPA's Regulatory Impact Analysis, and Attachment B, which is a spreadsheet with output from the Integrated Planning Model. The Commission identifies no procedure in the Court's rules for "lodging"

1

documents, and there is none. Rather, the proper way to submit record documents to the Court is by including them in the deferred joint appendix. Fed. R. App. P. 30(c); Statement of Intent to Utilize Deferred Joint Appendix, ECF#2058804 (June 10, 2024).

The Commission's claim that the spreadsheet in Appendix B is a non-record document does not justify the motion, and besides, it is wrong. That spreadsheet, along with other output spreadsheets from the Model, is part of the administrative record as an attachment to document number EPA-HQ-OAR-2023-0072-8397. *See* Certified Index 265, ECF#2058471 (June 7, 2024); https://www.regulations.gov/document/EPA-HQ-OAR-2023-0072-8397 (attachment titled "Baseline SSR"). The record version of the spreadsheet is titled "Baseline," whereas the version that the Commission obtained from EPA's website and filed as Attachment B is titled "2023 Reference Case," but the contents of the spreadsheet are identical. The reference case is just another term for the baseline. *See* IPM Documentation, EPA-HQ-OAR-2023-0072-8396, Ch.1 at 1-1 to 1-2, Ch. 3 at 3-29 (identifying the legislation and regulations considered in the reference case, which do not include the Rule under review here), https://www.epa.gov/power-sector-modeling/documentation-2023-reference-case. Even if the Commission were correct that Appendix B is a non-record document, however, that still would not justify its "lodging." Either a document is part of the record, in which case it should be

2

included in the deferred joint appendix, or it is extra-record, in which case the Clean Air Act prohibits its consideration. 42 U.S.C. § 7607(d)(7)(A). The Commission's motion is improper either way.

The characterizations of the two documents in the Commission's motion constitute impermissible supplemental briefing and should be disregarded. EPA certified the administrative record four months ago. Certified Index, ECF#2058471 (June 7, 2024). By the Commission's own admission, these documents were available when the Commission filed its brief, but the Commission simply failed to review the record. Mot. ¶ 2. "[T]ime constraints" and a "voluminous record," *id.*, do not excuse a party from its obligation to raise all arguments in its opening brief. The Commission joined the other parties in proposing the briefing schedule that it now claims provided inadequate time to review the record. *See* Petitioners' and Petitioners-Intervenors' Joint Proposed Briefing Schedule and Format 1, ECF#2068114 (Aug. 2, 2024). Nothing in the Court's rules allows the Commission to circumvent the court-ordered briefing deadline and word limit, Order, ECF#2069206 (Aug. 9, 2024), by belatedly adding new arguments to its briefing in the guise of a motion to lodge.

The Commission's impermissible supplemental arguments lack merit anyway. To start, the Commission misunderstands the spreadsheet in Appendix B, which reflects EPA's *baseline* projection of the electric sector *without* the Rule.

3

*Supra* p.2. Appendix B projects that in a world without this Rule, a low number of new coal and combined-cycle gas plants will be built with carbon capture and storage ("CCS").[1] That says nothing about the potential effects of the Rule under review. The Commission repeats that mistake when it quotes language from the Rule's preamble that "[n]ew combined cycle builds are 20 [gigawatts] by 2030"—a statement that again characterizes EPA's baseline projection, not a scenario that considers the Rule's potential effects. Mot. ¶ 2 (quoting 89 Fed. Reg. 39798, 40005 (May 9, 2024)).

    The Commission also draws an unsupported conclusion from Appendix A. In Appendix A, EPA projected that, under one illustrative scenario that does take the Rule into account, 19 gigawatts worth of coal plants and 870 megawatts worth of combined-cycle gas plants will install CCS.[2] Mot. App. A at 3-27 to -28, 3-31. The

---

[1] In Appendix B, that number is rounded down and represented as zero. Mot. App. B. But in fact, the Rule's preamble noted that some projects for new gas plants with CCS have already been announced. 89 Fed. Reg. 39798, 39927-28 (May 9, 2024). That is real-world evidence that CCS-based requirements can be met.

[2] The Commission points to the Model's projection that, considering the potential effects of the Rule, one gigawatt of coal generation will be operating with CCS by 2045. Mot. ¶ 4 (citing Mot. App. A at 3-32). But as EPA explained in the record, the Model projected much higher numbers in 2035 and 2040. Mot. App. A at 3-31 to 3-32. Although the Model projects a drop in 2045 due to the expiration of CCS tax credit under 26 U.S.C. § 45Q (which, under current law, is available to plants for twelve years), EPA explained that "these projected outcomes [for 2045] are far from certain as the modeling results generally do not account for numerous potential changes that may occur over the next 20 or more years, any of which may enable these units to continue to operate economically for a longer period." 89 Fed. Reg. at

4

Commission is incorrect that EPA's achievability and cost-reasonableness determinations for CCS were "drawn based on" these projections in the Regulatory Impact Analysis. Mot. ¶ 2. EPA's achievability and cost-reasonableness determinations were based on other record justifications. *See* 89 Fed. Reg. at 39845-83, 39924-35.

In any case, Attachment A reflects that some coal and gas plants will install CCS under a modeled scenario with the Rule in effect, which is inconsistent with the Commission's claim that the Rule's CCS requirements are unreasonably costly. To the extent the Commission is arguing that CCS-based requirements are unreasonable in cost because EPA has not projected *more* CCS installation, that argument misunderstands the modeling. The modeling projects the "least-cost decisions" that power plant operators will make. Mot. App. A at 3-28. Even cost-reasonable requirements can "marginally increas[e] the cost of doing business in a competitive market," so that while some operators will install the controls, others may choose other compliance strategies. 89 Fed. Reg. at 39900; *see also* EPA, Response to Comments, Ch. 2 at 36, https://www.regulations.gov/document/EPA-HQ-OAR-2023-0072-8914. That does not mean that CCS-based requirements are unachievable or unreasonable in cost.

---

39900. In any case, EPA has committed to review and if appropriate revise this Rule by 2041. *Id.*; *see also id.* at 40056 (40 C.F.R. § 60.5795b).

5

For the reasons above, the Commission's motion should be denied, and the impermissible supplemental arguments in it should be disregarded.

>
> Respectfully submitted,
>
> TODD KIM
> Assistant Attorney General
>
>  /s/ Tsuki Hoshijima
> ERIC G. HOSTETLER
> CHLOE H. KOLMAN
> TSUKI HOSHIJIMA
> ELLIOT HIGGINS
> U.S. Department of Justice
> Environment and Natural Resources
>   Division
> P.O. Box 7611
> Washington, D.C. 20044
> (202) 532-3285 (Hoshijima)
> tsuki.hoshijima@usdoj.gov

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2) because, excluding the parts of the document exempted by Rule 32(f), it contains 1,129 words. This document complies with the typeface and type-style requirements of Rule 32(a)(5) and (6) because it was prepared in a proportionately spaced typeface using Microsoft Word in Times New Roman fourteen-point font.

>  /s/ Tsuki Hoshijima

## CERTIFICATE OF SERVICE

On October 15, 2024, I filed the foregoing using the Court's CM/ECF system, which will electronically serve all counsel of record registered to use the CM/ECF system.

<u>/s/ Tsuki Hoshijima</u>